## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

KELLY GOLDWIRE,            :
              Plaintiff,     :     No. 2:15-cv-2856
     v.                  :
                          :     JURY TRIAL DEMANDED
CITY OF PHILADELPHIA, et al.  :
           Defendants.   :

### **ORDER**

AND NOW, this _____ day of _____, 2015, upon consideration of the

Motion to Dismiss of Defendant City of Philadelphia, and Plaintiff's opposition thereto, it is

hereby ORDERED that said Motion is DENIED.


BY THE COURT:



_____
                                            J.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

KELLY GOLDWIRE,                       :
               Plaintiff,        :         No. 2:15-cv-2856
    v.                               :
                             :         JURY TRIAL DEMANDED
CITY OF PHILADELPHIA, et al.          :
               Defendants.        :

## PLAINTIFF'S RESPONSE TO MOTION TO DISMISS OF
## <u>DEFENDANT CITY OF PHILADELPHIA</u>

Plaintiff, Kelly Goldwire, by and through his attorneys, Gay Chacker & Mittin, P.C., files

the within response to the Motion to Dismiss of Defendant City of Philadelphia.  Mr. Goldwire

hereby incorporates by reference his opposing memorandum of law as if the same were set forth

in full herein.

WHEREFORE, plaintiff, Kelly Goldwire, respectfully requests that this Court enter an

order denying the Motion to Dismiss of defendant City of Philadelphia.


                                        /S/ BSC5184
                                   Brian S. Chacker, Esquire
                                   Gay Chacker & Mittin, P.C.
                                   1731 Spring Garden Street
                                   Philadelphia, PA 19130
                                   Tel: (215) 567-7955
                                   Fax: (215) 567-6809
                                   bchacker@gaychackermittin.net
                                   *Attorney for Plaintiff,*

Date:  August 11, 2015

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

KELLY GOLDWIRE,                        :
                Plaintiff,     :      No. 2:15-cv-2856
     v.                                 :
                               :      JURY TRIAL DEMANDED
CITY OF PHILADELPHIA, et al.           :
                Defendants.    :

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO THE MOTION TO DISMISS OF DEFENDANT CITY OF PHILADELPHIA

## I.  INTRODUCTION

This is a false arrest, malicious prosecution, and bystander liability action arising from the injuries sustained by plaintiff, Kelly Goldwire, as a result of defendants City of Philadelphia ("the City"), Philadelphia Police Officer Landherr ("defendant Landherr"), Philadelphia Police Officer Ricardo ("defendant Ricardo"), Philadelphia Police Officer Murawski ("defendant Murawski"), and John Doe Philadelphia Police Officers I-III ("defendant John Doe officers") (collectively "defendants") violation of Mr. Goldwire's constitutional rights.

There are a number of basic reasons why the City's motion should be denied.  First, the City violates the fundamental tenet of Rule 12(b)(6) by failing to accept as true the facts alleged in the Complaint and all reasonable inferences that can be drawn from those facts.  The City compounds the error by impermissibly insinuating its version of the facts and inferences that should be drawn there from to counter the allegations in the Complaint. On this basis alone, the City's Motion to Dismiss should be denied.

Second, the City ignores the well-established principle that courts are to construe the allegations contained within the Complaint in favor of the plaintiff and should not dismiss a claim unless it appears that Mr. Goldwire cannot prove any set of facts to support the claim that

would entitle him to relief.  The City misconstrues and, in some instances, misrepresents federal decisional law, including Ashcroft v. Iqbal, 556 U.S. 662 (2009) and Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), to suggest that plaintiff's Complaint does not meet the pleading requirements of Fed. R. Civ. P. 8.  This practice should not be countenanced by the Court.

Simply put, the allegations set forth in the Complaint adequately state claims for liability against the City.  Accordingly, the City's Motion to Dismiss should be denied.[1]

## II.   FACTS

The events described herein stem from the acts and omissions of defendant police officers and their rampant disregard for the policies and procedures of the City's police department, which turned a blind eye to the egregious behavior of their officers.

On March 24, 2014, plaintiff, Kelly Goldwire ("Mr. Goldwire"), was a certified Fugitive Recovery Agent (Certification No. PA 0111), which required him to pursue individuals who have open bench warrants.  See, Complaint at ¶ 8.  At or about 1:30 a.m., Mr. Goldwire was in his car driving in the area of 11th and Cambria Streets, Philadelphia, Pennsylvania.  Id. at ¶ 9.  He was actively investigating the whereabouts of a known fugitive.  Id.  As he was driving, Mr. Goldwire noticed a police vehicle driven by defendant Landerr start to follow him.  Id. at ¶¶ 11-13.  When defendant Landherr engaged the vehicle's lights Mr. Goldwire pulled over to the side of the road in compliance with the traffic stop.  Id.  Defendant Ricardo, defendant Murawski, and defendant John Doe Officers then arrived as back-up.  Id. at ¶ 14.  Defendant police officers

---

[1]    Moreover, on April 1, 2015, in response to a similar civil rights complaint filed by undersigned counsel, the City filed a motion to dismiss that is virtually identical to the motion presently before this Court. The Honorable Robert F. Kelly denied the City's motion on April 17, 2015. See Defendants' Motion to Dismiss in Formisano v. The City of Philadelphia, et al., 2:15-cv-01081-RK; see also, The Honorable Robert F. Kelly's Order dated April 17, 2015, true and correct copies of which are attached hereto as Exhibit "A" and Exhibit "B." The same outcome is warranted here.

approached Mr. Goldwire's vehicle, with defendant Landherr taking the lead. Id. at ¶¶ 15-16.

Defendant Landherr informed Mr. Goldwire that one of his taillights was out. Id. While

requesting Mr. Goldwire's driver's license and insurance information, defendant Landherr, who

knew Mr. Goldwire and knew his vehicle, asked whether Mr. Goldwire was armed and where his

firearm was located. Id. at ¶ 17.  In response, Mr. Goldwire stated that his firearm was behind

him on the floor of the vehicle. Id. at ¶ 18.

Without any basis in law, defendant Landherr instructed Mr. Goldwire to get out of the

car and immediately arrested him. Id. at ¶ 19.  Mr. Goldwire reminded defendant police officers

that he was licensed to carry a firearm. Id. at ¶ 20.   Mr. Goldwire  also offered to produce his all

of his licensing paperwork, which was in his wallet and included his Act 235 license. Id. at ¶ 21.

None of the defendant police officers would look at or review Mr. Goldwire's Act 235 license.

Id. at ¶ 22.  Despite knowing that Mr. Goldwire was properly licensed to carry a firearm,

defendant Lnadherr proceeded to detain and arrest Mr. Goldwire without any legal basis to do so.

Id. at ¶ 23.  Further, despite having an opportunity to intervene and prevent Mr. Goldwire's

unlawful arrest and detainment, none of the other defendant police officers made any effort to

prevent what they knew to be an improper arrest. Id. at ¶ 24.   Defendant police officers then

prepared and aided in the preparation of police paperwork that intentionally misrepresented the

events that led to the arrest of Mr. Goldwire. Id. at ¶ 25.  These misrepresentations were

intentional, malicious, in bad faith, deliberately indifferent and recklessly indifferent to Mr.

Goldwire's rights. Id.   At no time during the incident described in this Complaint did Mr.

Goldwire violate the laws of Pennsylvania or any other jurisdiction as described in the bogus

paperwork prepared by defendant Landherr. Id. at ¶ 26.  Subsequent to the unlawful arrest, Mr.

Goldwire unlawfully was charged with, Firearms Not To Be Carried Without License and Carry

3

Firearms Public In Philadelphia.  Id. at ¶ 27.

Initially, Mr. Goldwire was unable to afford bail.  Id. at ¶ 28.  As a result, he remained

incarcerated for five days.  Id. at ¶ 29.  At the time that the defendant police officers improperly

arrested and charged Mr. Goldwire, he advised defendants that he was receiving chemotherapy

and could not afford to miss his medical treatment appointment, which was scheduled for later

that morning.  Id. at ¶ 30.  As a result of his incarceration, Mr. Goldwire missed one of his

chemotherapy appointments.  Id. at ¶ 31.  On December 30, 2014, Mr. Goldwire was found not

guilty on all charges.  Id. at ¶ 32.  Mr. Goldwire continues to suffer from, *inter alia*, anxiety, fear,

and mental harm.  Id. at ¶ 33.  In addition, Mr. Goldwire was without his license to carry a

firearm for approximately five months as a result of the defendant police officers' improper and

illegal actions.  Id. at ¶ 34.   Further, at the time the Complaint was filed, over one year from the

date of the incident, Mr. Goldwire still did not have possession of his firearm.  Id. at ¶ 35.  As a

result, Mr. Goldwire has been unable to work as a Fugitive Recovery Agent.  Id. at ¶ 36.

Prior to March 24, 2014, it is alleged that the City developed and maintained policies

and/or customs exhibiting deliberate indifference to the constitutional rights of persons, which

caused the violation of Mr. Goldwire's rights.  Id. at ¶ 52.  For example, it is alleged that it was

the policy and/or custom of the City to cover-up and to avoid detection of acts of police abuse or

improper use of authority by charging victims of police abuse with criminal offenses thereby

attempting to prevent the victim's access to the courts and to due process.  Id. at ¶ 53.   Further, it

is alleged that it was also the policy and/or custom of the City to inadequately supervise and train

their police officers, including the defendant officers, thereby failing to adequately discourage

further constitutional violations on the part of their police officers.  Id. at ¶ 54.   The City did not

require appropriate in-service training or re-training of officers who were known to have

engaged in police misconduct.  Id.

The Complaint contains also allegations that it was the policy and/or custom of the City to inadequately supervise and train their police officers, including the defendant officers, against a code of silence or "blue code" of officers refusing to intervene against or provide truthful information against constitutional violations and misconduct committed by their fellow officers. Id. at ¶ 55.  The City and its Police Department have adopted and maintained for many years a recognized policy, custom and practice, which allows for falsely arresting, falsely imprisoning and maliciously prosecuting suspects by Police Officers, the same type of treatment to which Mr. Goldwire was subjected, and which violates the Fourth and Fourteenth Amendments of the Constitution of the United States, the laws of the United States and is in violation of 42 U.S.C. Section 1983. Id. at ¶ 57.

The City knew or should have known of the previously described policies, customs and practices of their Police Department. Id. at ¶ 58.   Nevertheless, the City, deliberately, knowingly, and negligently failed to take measures to stop or limit these damaging policies, customs and practices through proper training, supervision, and control of the officers, agents, and employees. Id.   As a result of the above described policies and customs, City of Philadelphia police officers, including defendant police officers, believed that their actions would not be properly monitored by supervisory officers and that misconduct would not be investigated or sanctioned, but would be tolerated and condoned. Id. at ¶ 59.  It was because of the City's developed and maintained policies and customs that defendant Landherr and his fellow officers acted in such an egregious manner to violate Mr. Goldwire's constitutional rights. See generally, id.

Defendant police officers acted with rampant disregard for policies and procedures in place by the City, and the City took no corrective action. As a result, Mr. Goldwire suffered repeated violations of his constitutional rights as the City turned a blind eye to the wrongdoings of defendant officers. Accordingly, the City's motion should be denied.

## III.    QUESTION PRESENTED

Should this Court deny the City's Motion to Dismiss where plaintiff alleges there is a known custom and practice of disregarding policies and procedures which has been accepted by defendant municipalities sufficient to establish a claim based upon Monell v. New York City?

**Suggested Answer: Yes.**

## IV.    ARGUMENT

### A.    Legal Standard

A motion to dismiss for failure to state a claim tests the sufficiency of the allegations contained in the plaintiff's complaint. See Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993). A court will not grant a motion to dismiss pursuant to Rule 12(b)(6) unless it is apparent that the plaintiff cannot prove any set of facts in support of his claim which would entitle him to relief. See Seinfeld v. Becherer, 461 F.3d 365, 367 n.1 (3d Cir. 2006).

In evaluating a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court must accept the plaintiffs' well-pleaded allegations as true and draw all reasonable inferences in their favor. See Phillips v. Cnty. of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008). The complaints "factual allegations must be enough to raise a right to relief above the speculative level." Id. at 234 (citations omitted). Thus, to survive a motion to dismiss under Rule 12(b)(6), a plaintiff must allege sufficient facts to nudge his claims across the line from conceivable to plausible. Id.

6

Pursuant to Federal Rule of Civil Procedure 8, a complaint need only set "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8. The Supreme Court's pronouncements in Iqbal and Twombly do not fundamentally alter this framework. Rather, those Courts made clear that a complaint must simply contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Bell Atlantic Corp.v. Twombly, at 555. As the Supreme Court clearly stated in Ashcroft v. Iqbal, at 883-884:

> Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." As the Court held in Twombly, 550 U.S. 544, the pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the-defendant unlawfully-harmed-me accusation, at 555 (citing Papasan v. Allain, 478 U.S. 265 (1986)). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." Twombly, at 555. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." Id. at 557.

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Id. at 570. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Id. at 556. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Ibid. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" Id. at 557.

> Two working principles underlie our decision in Twombly. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Id. at 555. Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual

7

allegation" (internal quotation marks omitted).  Rule 8 marks a
notable and generous departure from the hyper-technical, code-
pleading regime of a prior era, but it does not unlock the doors of
discovery for a plaintiff armed with nothing more than
conclusions.  Second, only a complaint that states a plausible claim
for relief survives a motion to dismiss. Id. at 556.  Determining
whether a complaint states a plausible claim for relief will, as the
Court of Appeals observed, be a context-specific task that requires
the reviewing court to draw on its judicial experience and common
sense. 490 F.3d at 157-158.  But where the well pleaded facts do
not permit the court to infer more than the mere possibility of
misconduct, the complaint has alleged -- but it has not "show[n]" --
"that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).

Indeed, the principles set forth in Twombly and Iqbal do not create, as the defense

suggests, a hyper-enhanced pleading requirement in federal civil cases.  In Briggs v. Godby,

2009 U.S.Dist. LEXIS 115697 *8-9 (E.D.Pa. December 10, 2009, Buckwalter, J.), Judge

Buckwalter concluded:

> Under Rule 12(b)(6), a defendant bears the burden of
> demonstrating that the plaintiff has not stated a claim upon which
> relief can be granted.  FED. R. CIV. P. 12(b)(6); see also Hedges
> v. United States, 404 F.3d 744, 750 (3d Cir. 2005).  In Bell Atl.
> Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d
> 929 (2007), the United States Supreme Court recognized that "a
> plaintiff's obligation to provide the 'grounds' of his 'entitle[ment]
> to relief' requires more than labels and conclusions, and a
> formulaic recitation of the elements of a cause of action will not
> do." Id. at 555.  Following the basic dictates of Twombly, the
> Supreme Court, in Ashcroft v. Iqbal, 129 S. Ct. 1937, 173 L.Ed. 2d
> 868 (2009), subsequently defined a two-pronged approach to a
> court's review of a motion to dismiss. (See above excerpt from
> Iqbal). See also McTernan v. City of York, 577 F.3d 521, 530-31
> (3d Cir. 2009).
>
> Notwithstanding these new dictates, the basic tenets of the Rule
> 12(b)(6) standard of review have remained static. DeFebo v.
> Andersen Windows, Inc., No. CIV.A.99-2993, 2009 U.S. Dist.
> LEXIS 110489, 2009 WL 4268553, at *4 (E.D. Pa. Nov. 3, 2009);
> Spence v. Brownsville Area Sch. Dist., No. CIV.A.08-626, 2008
> U.S. Dist. LEXIS 55026, 2008 WL 2779079, at *2 (W.D. Pa. Jul.
> 15, 2008).  The general rules of pleading still require only a short
> and plain statement of the claim showing that the pleader is

entitled to relief and need not contain detailed factual allegations. Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008). Further, the court must "accept all factual allegations in the complaint as true and view them in the light most favorable to the plaintiff." Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006). Finally, the court must "determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Pinkerton v. Roche Holdings Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002).

An application of the principles set forth in Iqbal, Twombly and Briggs demonstrate that the Complaint in this case satisfies the pleading requirements of Rule 8. Accordingly, the City's motion to dismiss should be denied.

**B.** **The City's Motion Should Be Denied Because Plaintiff's Complaint Alleges Sufficient Facts Supporting The Existence Of A Known Custom And Practice Of Disregarding Policies And Procedures Which Has Been Accepted By The City Sufficient To Establish A Claim Based Upon *Monell v. New York City*.**

Pursuant to section 1983, a municipality is liable when a plaintiff can demonstrate that the municipality itself, through the implementation of a municipal policy or custom, causes a constitutional violation. See Monell v. New York City Dep't of Social Services, 436 U.S. 658, 691–95, 98 (1978). Liability will be imposed when the policy or custom itself violates the Constitution or when the policy or custom, while not unconstitutional itself, is the "moving force" behind the constitutional tort of one its employees. Polk County v. Dodson, 454 U.S. 312 (1981).

Pursuant to Monell, a municipality can be held liable under section 1983 when it turns a "blind eye" to improper behavior by its employees. See Whichard v. Cheltenham Township, 1996 WL 502281, at *5 (E.D. Pa. Aug. 29, 1996); see also Natale v. Camden County Corr. Facility, 318 F.3d 575, 584 (3d Cir. 2003); City of Canton v. Harris, 489 U.S. 378, 390 (1989) ("[T]he failure to provide proper training may fairly be said to represent a policy for which the

city is responsible, and for which the city may be held liable if it actually causes injury.").

Here, not only has Mr. Goldwire pled sufficient facts to establish a claim based upon Monell v. City of New York, but he has set forth the specific policies created and the manner in which those policies were violated. Additionally, contrary to the suggestion of the City, there is no issue with the fact that a specific individual was not identified as the policymaker. The Supreme Court has held that the unconstitutional acts of municipal employees can create municipal liability *even where the acts have "not been formally approved by an appropriate decisionmaker."* Bd. of the County Comm'rs of Bryan County v. Brown, 520 U.S. 397, 404 (1997) (emphasis added); see also, Natale, 318 F.3d at 583-84. Moreover, courts have recognized that "custom can be established by other means, such as proof of knowledge and acquiescence" and that "Plaintiff may rely on a 'failure to train' theory." Cortlessa v. County of Chester, 2006 WL 1490145 at *7-8 (E.D. Pa. May 24, 2006).

In City of Canton, Ohio v. Harris, 489 U.S. 378 (1989), the plaintiff claimed that her constitutional rights had been violated when she was denied medical care while detained in a municipal jail. The Court noted that the relevant city policy did not itself violate Harris' constitutional rights, but explained that this did not resolve her failure to train claim:

> There can be little doubt that on its face the city's policy regarding medical treatment for detainees is constitutional. The policy states that the city jailer "shall ... have [a person needing medical care] taken to a hospital for medical treatment, with permission of his supervisor...." App. 33. It is difficult to see what constitutional guarantees are violated by such a policy.
>
> Nor, without more, would a city automatically be liable under § 1983 if one of its employees happened to apply the policy in an unconstitutional manner, for liability would then rest on *respondeat superior.* The claim in this case, however, is that if a concededly valid policy is unconstitutionally applied by a municipal employee, the city is liable if the employee has not been adequately trained and the constitutional wrong has been caused by that failure to train....

Id.  With respect to Harris' failure to train claim, the Supreme Court held that municipal liability

can be predicated upon a failure to train only where that failure amounts to "deliberate

indifference to the [constitutional] rights of persons with whom the police come in contact." Id.

at 389.  The Court also explained why deliberate indifference is required and the nature of the

relationship between liability for failure to train and the rule that a municipality is accountable

only for its own custom or policy:

> Only where a municipality's failure to train its employees in a relevant
> respect evidences a "deliberate indifference" to the rights of its
> inhabitants can such a shortcoming be properly thought of as a city
> "policy or custom" that is actionable under § 1983.... Only where a
> failure to train reflects a "deliberate" or "conscious" choice by a
> municipality—a "policy" as defined by our prior cases—can a city be
> liable for such a failure under § 1983.
>
> . . .
>
> It may seem contrary to common sense to assert that a municipality will
> actually have a policy of not taking reasonable steps to train its
> employees. But it may happen that in light of the duties assigned to
> specific officers or employees the need for more or different training is so
> obvious, and the inadequacy so likely to result in the violation of
> constitutional rights, that the policymakers of the city can reasonably be
> said to have been deliberately indifferent to the need....

Id.

Here, the Complaint contains all of the requirements of a Monell claim: (1) a municipal

policy or custom that results in constitutional infringement; (2) a widespread pattern of deliberate

indifference or a failure to adequately and properly train or supervise defendant police officers;

and (3) a resulting denial of plaintiff's constitutional rights.  See id. at *5. Specifically, Mr.

Goldwire alleges the following Monell based claim that, if proven true, subjects defendant to

liability:

> 52. Prior to March 24, 2014, the City of Philadelphia developed and maintained
> policies and/or customs exhibiting deliberate indifference to the

constitutional rights of persons, which caused the violation of Mr. Goldwire's rights.

53. It was the policy and/or custom of the City of Philadelphia to cover-up and to avoid detection of acts of police abuse or improper use of authority by charging victims of police abuse with criminal offenses thereby attempting to prevent the victim's access to the courts and to due process.

54. It was the policy and/or custom of the City of Philadelphia to inadequately supervise and train their police officers, including the defendant officers, thereby failing to adequately discourage further constitutional violations on the part of their police officers. The City of Philadelphia did not require appropriate in-service training or re-training of officers who were known to have engaged in police misconduct.

55. It was the policy and/or custom of the City of Philadelphia to inadequately supervise and train their police officers, including the defendant officers, against a code of silence or "blue code" of officers refusing to intervene against or provide truthful information against constitutional violations and misconduct committed by their fellow officers.

57. It is believed and therefore averred that the City of Philadelphia and their Police Departments have adopted and maintained for many years a recognized policy, custom and practice, which allows for falsely arresting, falsely imprisoning and maliciously prosecuting suspects by Police Officers, the same type of treatment to which Mr. Goldwire was subjected, and which violates the Fourth and Fourteenth Amendments of the Constitution of the United States, the laws of the United States and is in violation of 42 U.S.C. Section 1983.

58. It is believed and therefore averred that at the time that Mr. Goldwire was falsely arrested, falsely imprisoned and maliciously prosecuted, the City of Philadelphia knew or should have known of the previously described policy, custom and practice of their Police Departments, and it deliberately, knowingly, and negligently failed to take measures to stop or limit the policy, custom and practice, inter alia, providing proper training, supervision, and control of the officers, agents, and/or employees of the City of Philadelphia.

59. As a result of the above described policies and customs, police officers of the City of Philadelphia and the City of Philadelphia, including the defendant police officers, believed that their actions would not be properly monitored by supervisory officers and that misconduct would not be investigated or sanctioned, but would be tolerated and condoned.

60. As a result of the above actions, Mr. Goldwire suffered the damages as aforesaid.

12

See Complaint at ¶¶ 52-60.

The facts as alleged demonstrate clearly that defendant police officers acted with rampant disregard for policies and procedures in place by the City and violated Mr. Goldwire's constitutional rights. Defendant Landherr arrested Mr. Goldwire without any legal basis to do so and despite knowing that Mr. Goldwire was a licensed fugitive recovery agent. In fact, when Mr. Goldwire attempted to produce his all of his licensing paperwork, including his Act 235 license, defendant police officers would not permit him to do so. This happened notwithstanding the fact that all defendant police officers knew that Mr. Goldwire worked as a licensed fugitive recovery agent. Indeed, defendant Ricardo, defendant Murawski, and defendant John Doe officers all had an opportunity to prevent Mr. Goldwire's unlawful arrest and detainment, but chose stand idly as Mr. Goldwire's rights were violated. The fact that so many officers could be bystanders to the unlawful arrest and yet fail to intervene is testament to the widespread disregard for policies and procedures in place by the City.

Defendant police officers then attempted to conceal their actionable conduct through paperwork that intentionally misrepresented the events that led to Mr. Goldwire's unlawful arrest. The fact that Mr. Goldwire was unlawfully charged with Firearms Not To Be Carried Without License and Carry Firearms Public In Philadelphia, while defendant police officers were aware that Mr. Goldwire was working with a valid Act 235 license is further evidence that there was rampant disregard for policies and procedures in place by the City.

On December 30, 2014, Mr. Goldwire was found not guilty on all charges, but the negative impact on Mr. Goldwire cannot be cured by this victory alone. Mr. Goldwire was forced to remain incarcerated for five days until he was able to gather sufficient bail funds. Further, despite knowing Mr. Goldwire was being treated for cancer with chemotherapy,

13

defendant police officers unlawful actions caused Mr. Goldwire to miss one of his chemotherapy appointments.  Today, Mr. Goldwire continues to suffer from, *inter alia*, anxiety, fear, and mental harm.  Further, at the time Mr. Goldwire filed his Complaint, *over one year after the alleged incident*, he still did not have possession of his firearm.  As a result, it has been impossible for Mr. Goldwire to work as a Fugitive Recovery Agent.

Because of the policies, practices and customs of the City prior to March 24, 2014, the police officer defendants in this case believed their actions with respect to Mr. Goldwire were acceptable.  It was because of the City's developed and maintained policies and customs that defendant Landherr and his fellow officers acted in such an egregious manner to violate Mr. Goldwire's constitutional rights.  See Complaint generally.  Indeed, it is alleged a code of silence or "blue code" exists in the Police Department, and that the City did nothing to stop or limit the policy and/or custom of police officers refusing to intervene against or provide truthful information against constitutional violations and misconduct committed by their fellow officers. Id. at ¶ 55.

The City knew or should have known of the previously described policies, customs and practices of its Police Department, and it deliberately, knowingly, and negligently failed to take measures to stop or limit the policy, custom and practice by, *inter alia*, providing proper training, supervision, and control of City police officers, agents, and employees. Id. at ¶ 58.  As a result, City police officers, including the defendant police officers in this case, believed that their actions would not be properly monitored by supervisory officers and that misconduct would not be investigated or sanctioned, but would be tolerated and condoned.  Id. at ¶59. Defendants Landherr, defendant Ricardo, defendant Murawski, and John Doe Officers believed that they could rampantly disregard policies and procedures in place by the City, and believed that the

City would fail to impose consequences or take corrective action.

Assuming those allegations to be true, the specific actions/inactions of the City to develop policies, procedures and customs for the supervision and training of their officers and employees clearly amount to a constitutional violation. At a minimum, whether the actions/inactions of City amount to a constitutional violation is a disputed issue of fact that should be left for a jury to decide. Indeed, Pennsylvania District Courts have held that, "[t]here is no requirement at the pleading stage for plaintiff to identify a specific policy to survive a motion to dismiss." Decker v. Borough of Hughestown, 2009 U.S. Dist. LEXIS 110113 (M.D. Pa. Nov. 25, 2009)(Caputo, J.) citing Carter v. City of Philadelphia, 181 F.3d 339, 358 (3d Cir. 1999).

Simply put, defendant Landherr abused the power entrusted to him as a police officer and the City knowingly turned a blind eye. Further, defendant Ricardo, defendant Murawski, and defendant John Doe Officers acted as resources, and ultimately, directly aided defendant Landherr. Throughout the course of these events the City, implicitly, through its customs, practices, policies and procedures trained the officers that their actions were acceptable. For these reasons, it is reasonable to infer that, if there was rampant disregard for the policies and procedures of the City, it is because the City turned a blind eye to the egregious behavior of their officers. This is the basis of Mr. Goldwire's Monell claim, and accordingly, the City's motion to dismiss should be denied.[2]

---

[2]    Further, as noted supra at 2, n.1, a consequence of the City's decision to submit a motion that is virtually identical to a motion denied previously on April 17, 2015 is that this Honorable Court has already found the legal argument sub judice to be unpersuasive. See Exhibit "A"; see also, Exhibit "B." Accordingly, the City's instant motion should also be denied.

V.    **CONCLUSION**

For all of the foregoing reasons, plaintiff Kelly Goldwire, respectfully requests that this Court enter an Order, in the form proposed, denying defendant City of Philadelphia's Motion to Dismiss.

Respectfully submitted,


_____/s BSC5184_____
Brian S. Chacker, Esquire
Gay Chacker & Mittin, P.C.
1731 Spring Garden Street
Philadelphia, PA  19130
Tel: (215) 567-7955
Fax: (215) 567-6809
bchacker@gaychackermittin.net
Date:  August 11, 2015          *Attorney for Plaintiff*

16

## <u>CERTIFICATE OF SERVICE</u>

I, Brian S. Chacker, Esquire, hereby certify that a true and correct copy of the foregoing

Opposition to defendant City of Philadelphia's Motion to Dismiss was served this 11th day of

August, 2015, by the ECF electronic filing system, upon the following:

Michael R. Miller, Esquire
Assistant City Solicitor
City of Philadelphia Law Department
1514 Arch Street, 14th Floor
Philadelphia, PA 19102
Michael.r.miller@phila.gov


_____/s BSC5184_____

Brian S. Chacker, Esquire

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| MICHELLE FORMISANO, | : | |
| Plaintiff, | : | |
| | : | **Civil Action** |
| v. | : | **No. 15-1081** |
| | : | |
| CITY OF PHILADELPHIA, et al., | : | |
| Defendants. | : | |

**ORDER**

AND NOW, this _____ day of _____, 2015, upon consideration of

the Defendant's Motion to Dismiss, it is **HEREBY ORDERED** that the Motion is **GRANTED**.

BY THE COURT:

_____



## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MICHELLE FORMISANO,** | : | |
| **Plaintiff,** | : | |
| | : | **Civil Action** |
| **v.** | : | **No. 15-1081** |
| | : | |
| **CITY OF PHILADELPHIA, et al.,** | : | |
| **Defendants.** | : | |

### DEFENDANT'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

Defendant City of Philadelphia hereby files this Motion to Dismiss for Failure to State a Claim pursuant to Federal Rule of Civil Procedure 12(b)(6).  In support of this motion, the Defendant incorporates the attached Memorandum of Law.  The Defendant respectfully requests that this Court dismiss the claims asserted against it.

Date:  April 1, 2015

Respectfully submitted,

/s/ Michael R. Miller
Michael R. Miller
Assistant City Solicitor
Pa. Attorney ID No. 315759
City of Philadelphia Law Department
1515 Arch Street, 14th Floor
Philadelphia, PA 19102
215-683-5433 (phone)
215-683-5397 (fax)
michael.r.miller@phila.gov

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MICHELLE FORMISANO,** | : | |
| **Plaintiff,** | : | |
| | : | **Civil Action** |
| **v.** | : | **No. 15-1081** |
| | : | |
| **CITY OF PHILADELPHIA, et al.,** | : | |
| **Defendants.** | : | |

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANT'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

Plaintiff Michelle Formisano seeks to circumvent Third Circuit case law by suing the City of Philadelphia without making any factual allegations regarding a municipal policy or custom. Therefore, the Court should dismiss Plaintiff's claims against the City.

### I.       BACKGROUND

In her complaint, Plaintiff alleges that a former City of Philadelphia police officer named Jeffrey Harrison[1] violated her constitutional rights. Plaintiff also brings a 42 U.S.C. § 1983 claim against the City of Philadelphia pursuant to *Monell v. Department of Social Services of New York City*, 436 U.S. 658 (1978). *See id.* at ¶¶ 46-55. However, Plaintiff's complaint includes no *factual* allegations regarding the policies or customs of the City. Instead, Plaintiff attempts to state a *Monell* claim by merely setting forth a series of conclusory and general statements. *See id.* Moreover, Plaintiff completely fails to allege conduct by a municipal decisionmaker in her complaint. *See id.*

---

[1] The City has terminated Mr. Harrison's employment and has not accepted service on his behalf.

## II.   ARGUMENT

The Court should grant the motion and dismiss[2] the municipal liability claim set forth in

Count 3 of Plaintiff's complaint.   Plaintiff attempts to sue the City under *Monell*.  *See* Cmplt. at

¶¶ 46-55.  In adjudicating *Monell* claims, "courts have recognized a two-path track to municipal

liability under § 1983, depending on whether the allegation is based on municipal policy or

custom." *Mulholland v. County of Berks*, 706 F.3d 227, 237 (3d Cir. 2013) (citations and

quotations omitted).  A policy occurs when a decisionmaker with final authority "issues an

official proclamation, policy, or edict," while a custom occurs when practices are "so permanent

and well-settled as to virtually constitute law." *See id.* (citations and quotations omitted).

Here, Plaintiff fails to adequately allege a *Monell* claim for at least three reasons.  First,

Plaintiff's complaint simply parrots the legal standard for *Monell* liability without pleading any

actual facts regarding a municipal policy or custom.  Second, Plaintiff fails to identify a

municipal policymaker in her complaint.  Finally, Plaintiff cannot state a failure-to-train claim

because her complaint fails to identify specific instances of prior police misconduct caused by

allegedly inadequate training.

### A.   Plaintiff's *Monell* Claim Fails Because She Pleads No Facts Regarding a Municipal Policy or Custom.

The Court should dismiss the City of Philadelphia from this case because Plaintiff simply

parrots the legal standard for municipal liability under § 1983 without pleading any supporting

facts.  In *Wood v. Williams*, 568 F. App'x 100 (3d Cir. 2014), the Third Circuit Court of

---

[2] A plaintiff cannot survive a motion to dismiss under Rule 12(b)(6) without pleading "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Under this standard, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *See id.*  Put differently, while a court should accept the truth of a complaint's factual allegations, it should not credit a plaintiff's "bald assertions" or "legal conclusions." *Morse v. Lower Merion Sch. Dist.,* 132 F.3d 902, 906 (3d Cir. 1997) (citations and quotations omitted).

Appeals affirmed the dismissal of a *Monell* claim. *See id.* at 102. The plaintiff in *Wood* set forth a series of conclusory allegations that "simply paraphrase[ed]" the elements of *Monell* liability. *See id.* at 103-04. The Third Circuit held that such "conclusory and general" averments were "insufficient" and "fail[ed] to satisfy the rigorous standards of culpability and causation required to state a claim for municipal liability." *See id.* at 104 (citations and quotations omitted).

In this case, Plaintiff has tried to plead a *Monell* claim by relying on the same sort of conclusory allegations that the Third Circuit rejected in *Wood*. *Compare* Cmplt. at ¶¶ 46-55 (setting forth *Monell* allegations), *with Wood*, 568 F. App'x at 103-04 (discussing and rejecting similar *Monell* allegations). Such vague and general allegations fail to state a claim, because averments that "amount to a mere recitation of the . . . elements required to bring forth a *Monell* claim . . . are insufficient to survive a motion to dismiss." *See Butler v. City of Phila.*, No. 11-7891, 2013 WL 5842709, at *2 (E.D. Pa. Oct. 31, 2013). Instead, a complaint must include "specific *factual* allegations referencing the conduct, time, place, and persons responsible for any official municipal policy or custom." *See Torres v. City of Allentown*, No. 07-1934, 2008 WL 2600314, at *5 (E.D. Pa. June 30, 3008) (emphasis added) (citing *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005)). Plaintiff's *Monell* averments include no such factual allegations. *See* Cmplt. at ¶¶ 46-55. Therefore, the Court should dismiss Count 3 of Plaintiff's complaint. *See Butler*, 2013 WL 5842709, at *2 (granting motion to dismiss complaint that merely parroted the legal standard of *Monell*); *Saleem v. Sch. Dist. of Phila.*, No. 12-3193, 2013 WL 5763206, at *3 (E.D. Pa. Oct. 24, 2013) (dismissing *Monell* claim under Rule 12(b)(6) because plaintiff pled "the 'phraseology' of an alleged policy, practice, procedure, custom and endorsement . . . but [failed to plead] supporting facts"); *Niblack v. Murray*, No. 12-6910, 2013 WL 4432081, at *8-9 (D.N.J. Aug. 14, 2013) (dismissing *Monell* claim because "[p]laintiff fails to allege any facts to

support his naked assertion of an unlawful municipal policy or custom"); *Torres*, 2008 WL 2600314, at \*5 (dismissing *Monell* claim for failure to plead specific facts).

**B.   Plaintiff's *Monell* Claim Fails Because She Does Not Allege Conduct by a Municipal Policymaker.**

Plaintiff also fails to state a *Monell* claim because her complaint does not identify a specific policymaker involved in the formation of a custom or policy.  The Third Circuit has held on multiple occasions that a complaint which neglects "to allege conduct by a municipal decisionmaker" cannot survive a motion to dismiss its *Monell* claim.  *McTernan v. City of York*, 564 F.3d 636, 658-59 (3d Cir. 2009); *see Rees v. Office of Children and Youth*, 473 F. App'x 139, 143 (3d Cir. 2012) (holding that a complaint cannot state a *Monell* claim if it "fails to link the alleged offending policies or customs to anyone within [a municipality] who had policy-making authority"); *see also Andrews v. City of Phila.*, 895 F.2d 1469, 1481 (3d Cir. 1990) (noting that a municipal decisionmaker in a § 1983 case must possess "final, unreviewable discretion to make a decision or take an action").  Here, Plaintiff's complaint neither identifies a municipal policymaker nor makes any allegations about the conduct of such a policymaker.  *See* Cmplt. at ¶¶ 46-55.  Therefore, the Court should dismiss Count 3 of Plaintiff's complaint for this additional reason.  *See Ross v. Project H.O.M.E.*, No. 13-7561, 2014 WL 2464962, at \*3 (E.D. Pa. June 2, 2014) ("A viable *Monell* claim requires that a plaintiff allege that a policymaker was involved in the policy or custom at issue in the case."); *Davis v. City of Phila.*, No. 05-4571, 2009 WL 2461777, at \*4 (E.D. Pa. Aug. 11, 2009) (holding that a *Monell* claim cannot survive a motion to dismiss "without an allegation connecting a specific policymaker to the custom at issue").

**C.     Plaintiff's Failure-to-Train Claim Fails Because She Does Not Allege Prior Instances of Police Misconduct.**

Finally, Plaintiff fails to state a failure-to-train claim because her complaint does not identify prior instances of police misconduct caused by allegedly inadequate training. Although the failure of a municipality to train its employees may support a *Monell* claim, such a theory represents the most "tenuous" sort of municipal liability under § 1983. *See Connick v. Thompson*, 131 S. Ct. 1350, 1359 (2011). For instance, the complaints in *Niblack* and *Williams v. Borough of Sharon Hill*, No. 12-5395, 2013 WL 4743471 (E.D. Pa. Sept. 4, 2013), pled failure-to-train claims with the same type of conclusory language that Plaintiff uses in this case. *See Williams*, 2013 WL 4743471, at *3 (describing plaintiff's failure to train claim); *Niblack*, 2013 WL 4432081, at *2, 6 (same). The courts dismissed these claims because the complaints relied on bald assertions and failed to identify specific instances of prior misconduct caused by the allegedly inadequate training. *See Williams*, 2013 WL 4743471, at *4 (granting a motion to dismiss a failure to train claim because the complaint "does not plead any fact to suggest a pattern of similar constitutional violations by untrained employees") (citations and quotations omitted); *Niblack*, 2013 WL 4432081, at *9 (granting a motion to dismiss a failure to train claim when plaintiff "allege[d] no facts concerning prior instances of police using excessive force during arrest[s]"). Here too, Plaintiff pleads a failure-to-train claim with conclusory language that neglects to allege specific instances of prior misconduct by police officers. *See* Cmplt. at ¶¶ 49-50. Such a pleading deficiency necessitates the dismissal of Plaintiff's failure-to-train claim.[3]

---

[3] Plaintiff's failure-to-train claim also fails because she neglects to specifically plead "how the training programs for the police officers are inadequate." *See Torres*, 2008 WL 2600314, at *5 (granting motion to dismiss failure to train claim when complaint vaguely alleged that defendant municipality "did not require appropriate in-service training or re-training of officers who were known to have engaged in police misconduct").

**III.    CONCLUSION**

For the reasons set forth above, the Defendant requests that this Court grant the instant

motion and dismiss the claims asserted against it.


Date:  April 1, 2015                                    Respectfully submitted,


                                                        /s/ Michael R. Miller
                                                        Michael R. Miller
                                                        Assistant City Solicitor
                                                        Pa. Attorney ID No. 315759
                                                        City of Philadelphia Law Department
                                                        1515 Arch Street, 14th Floor
                                                        Philadelphia, PA 19102
                                                        215-683-5433 (phone)
                                                        215-683-5397 (fax)
                                                        michael.r.miller@phila.gov

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MICHELLE FORMISANO,** | : | |
| **Plaintiff,** | : | |
| | : | |
| | : | **Civil Action** |
| **v.** | : | **No. 15-1081** |
| | : | |
| **CITY OF PHILADELPHIA, et al.,** | : | |
| **Defendants.** | : | |

## CERTIFICATE OF SERVICE

I hereby certify that on the date below, the Defendant's Motion to Dismiss was filed via the Court's electronic filing system and is available for downloading.

Date:  April 1, 2015

/s/ Michael R. Miller
Michael R. Miller
Assistant City Solicitor
Pa. Attorney ID No. 315759
City of Philadelphia Law Department
1515 Arch Street, 14th Floor
Philadelphia, PA 19102
215-683-5433 (phone)
215-683-5397 (fax)
michael.r.miller@phila.gov

Case 2:15-cv-02856-JPH   Document 8   Filed 08/11/15   Page 29 of 29
Case 2:15-cv-01081-RK   Document 4   Filed 04/17/15   Page 1 of 1
Case 2:15-cv-01081-RK   Document 3   Filed 04/14/15   Page 1 of 19

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| MICHELLE FORMISANO, | : | |
| Plaintiff, | : | No. 2:15-cv-1081 |
| v. | : | |
| | : | JURY TRIAL DEMANDED |
| CITY OF PHILADELPHIA, et al. | : | |
| Defendants. | : | |

### ORDER

AND NOW, this _17th_ day of _April_, 2015, upon consideration of the

Motion to Dismiss of Defendant City of Philadelphia, and Plaintiff's opposition thereto, it is

hereby ORDERED that said Motion is DENIED.

BY THE COURT:

_Robert F. Kelly_
J.


EXHIBIT
B