## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

KELLY GOLDWIRE,                    :
               Plaintiff,    :     No. 2:15-cv-2856
   v.                              :
                       :     JURY TRIAL DEMANDED
CITY OF PHILADELPHIA, et al.       :
           Defendants.  :

### ORDER

AND NOW, this ____ day of _____, 2015, upon consideration of the

Motion to Dismiss of Defendant City of Philadelphia Police Officers Ricardo and Murawski, and

Plaintiff's opposition thereto, it is hereby ORDERED that said Motion is DENIED.


BY THE COURT:


_____
                                J.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

KELLY GOLDWIRE,                          :
                Plaintiff,         :        No. 2:15-cv-2856
     v.                                :
                         :        JURY TRIAL DEMANDED
CITY OF PHILADELPHIA, et al.             :
              Defendants.      :

## **PLAINTIFF'S RESPONSE TO DFENDANTS' MOTION TO DISMISS**

Plaintiff, Kelly Goldwire, by and through his attorneys, Gay Chacker & Mittin, P.C., hereby files the within response to Defendants' Motion to Dismiss for Failure to State a Claim. Mr. Goldwire incorporates by reference his opposing memorandum of law as if the same were set forth in full herein.

WHEREFORE, plaintiff, Kelly Goldwire, respectfully requests that this Court enter an order denying the Motion to Dismiss of defendant police officers Ricardo and Murawski.

                                /S/ BSC5184
                              Brian S. Chacker, Esquire
                              Gay Chacker & Mittin, P.C.
                              1731 Spring Garden Street
                              Philadelphia, PA 19130
                              Tel: (215) 567-7955
                              Fax: (215) 567-6809
                              bchacker@gaychackermittin.net
                              *Attorney for Plaintiff*

Date:  August 11, 2015

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

KELLY GOLDWIRE,                    :
        Plaintiff,            :       No. 2:15-cv-2856
   v.                              :
                  :       JURY TRIAL DEMANDED
CITY OF PHILADELPHIA, et al.       :
        Defendants.          :

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

## I.    INTRODUCTION

This is a false arrest, malicious prosecution, and bystander liability action arising from the injuries sustained by plaintiff, Kelly Goldwire, as a result of defendants City of Philadelphia ("the City"), Philadelphia Police Officer Landherr ("defendant Landherr"), Philadelphia Police Officer Ricardo ("defendant Ricardo"), Philadelphia Police Officer Murawski ("defendant Murawski"), and John Doe Philadelphia Police Officers I-III ("defendant John Doe officers") (collectively "defendants") violation of Mr. Goldwire's constitutional rights.

There are a number of basic reasons why the defendant police officers' motion should be denied.[1]  Most importantly, contrary to the argument set forth in defendants' motion, an excessive force claim is not a prerequisite for bystander liability and the two claims do not necessarily go hand in hand.  Defendants cite no case law on this issue, but instead rely on a purported absence of case law and model jury instructions.  This is argument is simply untrue.

---

[1]     With respect to the legal standard for a motion to dismiss, the City ignores the well-established principle that courts are to construe the allegations contained within the Complaint in favor of the plaintiff and should not dismiss a claim unless it appears that plaintiff cannot prove any set of facts to support the claim that would entitle him to relief.  The City misconstrues and, in some instances, misrepresents federal decisional law, including Ashcroft v. Iqbal, 556 U.S. 662 (2009) and Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), to suggest that plaintiff's Complaint does not meet the pleading requirements of Fed. R. Civ. P. 8.  This practice should not be countenanced by the Court.

Federal Courts, including courts within the Third Circuit, have consistently and unequivocally viewed bystander liability as a viable claim where a plaintiff alleges false arrest and/or malicious prosecution, but does not allege excessive force.  See, Coleman v. City of Phladelphia, 2005 WL 2396754, at *7 (E.D. Pa. Sept. 28, 2005) (noting that plaintiff's claim for section 1983 bystander liability emanated from his claim that defendants deprived him of his constitutional right to be free from unreasonable searches); Dempsey v. Bucknell Univ., 2012 WL 1569826, at *11 (M.D. Pa. May 3, 2012) ("Here, Plaintiffs allege that Defendant Lauver knew that arresting officers lacked probable cause to arrest and prosecute Plaintiff Reed, that he had the authority to stop the arrest and prosecution, and that he failed to do so . . . . Plaintiffs have alleged sufficient facts to withstand a motion to dismiss a supervisory liability or bystander liability claim against Defendant Lauver"); Smith v. Mensinger, 293 F.3d 641, 650-52 (3d Cir.2002) ("In order to establish a claim for bystander liability for the actions of a fellow officer, the plaintiff must establish that the officer "observe[ed] or had reason to know . . . *that a citizen was being unjustifiably arrested*") (internal citations omitted) (emphasis added).  Thus, defendants' representation that no Third Circuit case law addresses this issue clearly is incorrect.

Additionally, any argument that defendant police officers are entitled to qualified immunity must also fail.  When deciding a motion to dismiss the Court must accept plaintiff's well-pleaded allegations as true and draw all reasonable inferences in his favor.  Here, the allegations set forth in the Complaint make out a violation of several constitutional rights under the Fourth and Fourteen Amendments.  See generally, Complaint (alleging, *inter alia*, that defendant police officers are liable as bystanders for knowing Mr. Goldwire's rights were being violated (that he was being falsely arrested and imprisoned) and choosing to turn a blind eye).  Even if there were no case law directly on point, defendant police officers Ricardo and Murawski would still be liable as bystanders because

2

any police officer should know that a duty to intervene exists when a fellow officer is falsely arresting, maliciously prosecuting, and falsely imprisoning a citizen in plain sight.  Thus, the failure to act in such a case violates clearly established rights, leaves the officer liable as a bystander, and precludes any defense of qualified immunity.  Accordingly, the motion to dismiss of defendant police officers Ricardo and Murawski should be denied.

## II.    <u>FACTS</u>

On March 24, 2014, Plaintiff, Kelly Goldwire ("Mr. Goldwire"), was a certified Fugitive Recovery Agent (Certification No. PA 0111), which required him to pursue individuals who have open bench warrants.  <u>See</u>, Complaint at ¶ 8.  At or about 1:30 a.m., Mr. Goldwire was in his car driving in the area of 11th and Cambria Streets, Philadelphia, Pennsylvania. <u>Id.</u> at ¶ 9. He was actively investigating the whereabouts of a known fugitive.  <u>Id.</u>  As he was driving, Mr. Goldwire noticed a police vehicle driven by defendant Landerr start to follow him.  <u>Id.</u> at ¶¶ 11-13.  When defendant Landherr engaged the vehicle's lights Mr. Goldwire pulled over to the side of the road in compliance with the traffic stop.  <u>Id.</u>  Defendant Ricardo, defendant Murawski, and defendant John Doe Officers then arrived as back-up.  <u>Id.</u> at ¶ 14.  Defendant police officers approached Mr. Goldwire's vehicle, with defendant Landherr taking the lead.  <u>Id.</u> at ¶¶ 15-16. Defendant Landherr informed Mr. Goldwire that one of his taillights was out.  <u>Id.</u>  While requesting Mr. Goldwire's driver's license and insurance information, defendant Landherr, who knew Mr. Goldwire and knew his vehicle, asked whether Mr. Goldwire was armed and where his firearm was located.  <u>Id.</u> at ¶ 17.  In response, Mr. Goldwire stated that his firearm was behind him on the floor of the vehicle.  <u>Id.</u> at ¶ 18.

Without any basis in law, defendant Landherr instructed Mr. Goldwire to get out of the car and immediately arrested him.  <u>Id.</u> at ¶ 19.  Mr. Goldwire reminded defendant police officers

that he was licensed to carry a firearm. Id. at ¶ 20.   Mr. Goldwire  also offered to produce his all

of his licensing paperwork, which was in his wallet and included his Act 235 license. Id. at ¶ 21.

None of the defendant police officers would look at or review Mr. Goldwire's Act 235 license.

Id. at ¶ 22. Despite knowing that Mr. Goldwire was properly licensed to carry a firearm,

defendant Lnadherr proceeded to detain and arrest Mr. Goldwire without any legal basis to do so.

Id. at ¶ 23.  Further, despite having an opportunity to intervene and prevent Mr. Goldwire's

unlawful arrest and detainment, none of the other defendant police officers made any effort to

prevent what they knew to be an improper arrest. Id. at ¶ 24.   Defendant police officers then

prepared and aided in the preparation of police paperwork that intentionally misrepresented the

events that led to the arrest of Mr. Goldwire. Id. at ¶ 25. These misrepresentations were

intentional, malicious, in bad faith, deliberately indifferent and recklessly indifferent to Mr.

Goldwire's rights. Id.   At no time during the incident described in this Complaint did Mr.

Goldwire violate the laws of Pennsylvania or any other jurisdiction as described in the bogus

paperwork prepared by defendant Landherr. Id. at ¶ 26.  Subsequent to the unlawful arrest, Mr.

Goldwire unlawfully was charged with, Firearms Not To Be Carried Without License and Carry

Firearms Public In Philadelphia. Id. at ¶ 27.

Initially, Mr. Goldwire was unable to afford bail. Id. at ¶ 28.  As a result, he remained

incarcerated for five days. Id. at ¶ 29.   At the time that the defendant police officers improperly

arrested and charged Mr. Goldwire, he advised defendants that he was receiving chemotherapy

and could not afford to miss his medical treatment appointment, which was scheduled for later

that morning. Id. at ¶ 30.  As a result of his incarceration, Mr. Goldwire missed one of his

chemotherapy appointments. Id. at ¶ 31.  On December 30, 2014, Mr. Goldwire was found not

guilty on all charges. Id. at ¶ 32.  Mr. Goldwire continues to suffer from, inter alia, anxiety, fear,

and mental harm. Id. at ¶ 33.  In addition, Mr. Goldwire was without his license to carry a

firearm for approximately five months as a result of the defendant police officers' improper and

illegal actions. Id. at ¶ 34.   At the time the Complaint was filed, over one year from the date of

the incident, Mr. Goldwire still did not have possession of his firearm. Id. at ¶ 35.  As a result,

Mr. Goldwire has been unable to work as a Fugitive Recovery Agent. Id. at ¶ 36.

Simply put, the facts as alleged show that defendant Ricardo, defendant Murawski, and

defendant John Doe police officers stood idly while defendant Landherr falsely arrested and

maliciously prosecuted Mr. Goldwire.  As a result, Mr. Goldwire suffered repeated violations of

his constitutional rights under the Fourth and Fourteenth Amendments. Accordingly, the motion

to dismiss of defendant police officers Ricardo and Murawski should be denied.

## III.    **QUESTION PRESENTED**

Should this Court deny the motion to dismiss of defendant police officers Ricardo and

Murawski where, viewed in the light most favorable to plaintiff, the Complaint supports a claim

of bystander liability and overcomes any purported qualified immunity through allegations of

defendants' failure to intervene to prevent false arrest, false imprisonment and malicious

prosecution?

**Suggested Answer: Yes.**

## IV.    **ARGUMENT**

### A.     **Legal Standard**

A motion to dismiss for failure to state a claim tests the sufficiency of the allegations

contained in the plaintiff's complaint. See Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993).

A court will not grant a motion to dismiss pursuant to Rule 12(b)(6) unless it is apparent that the

plaintiff cannot prove any set of facts in support of his claim which would entitle him to relief.

See Seinfeld v. Becherer, 461 F.3d 365, 367 n.1 (3d Cir. 2006).

In evaluating a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court must accept the plaintiffs' well-pleaded allegations as true and draw all reasonable inferences in their favor. See Phillips v. County of Allegeheny, 515 F.3d 224, 231 (3d Cir. 2008). The complaints "factual allegations must be enough to raise a right to relief above the speculative level." Id. at 234 (citations omitted). Thus, to survive a motion to dismiss under Rule 12(b)(6), a plaintiff must allege sufficient facts to nudge his claims across the line from conceivable to plausible." Id. (citations omitted).

Pursuant to Federal Rule of Civil Procedure 8, a complaint need only set "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8. The Supreme Court's pronouncements in Iqbal and Twombly do not fundamentally alter this framework. Rather, those Courts made clear that a complaint must simply contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Bell Atlantic Corp.v. Twombly, at 555. Indeed, the principles set forth in Twombly and Iqbal do not create, as the defense suggests, a hyper-enhanced pleading requirement in federal civil cases. See Briggs v. Godby, 2009 U.S.Dist. LEXIS 115697 *8-9 (E.D.Pa. December 10, 2009, Buckwalter, J.).

Here, an application of the principles set forth in Iqbal, Twombly and Briggs demonstrate that the Complaint in this case satisfies the pleading requirements of Rule 8. Accordingly, defendants' motion to dismiss should be denied.

## B.     The Moving Defendants' Motion Should Be Denied Because Plaintiff Properly States A Claim Based Upon Bystander Liability

Contrary to defendants' motion dismiss, Mr. Goldwire has set forth a plausible recitation of facts supporting bystander liability against defendant Ricardo and defendant Murawski. A

plaintiff can bring a Section 1983 claim against an officer under the theory of bystander liability by demonstrating that the officer:  (1) knows that a fellow officer is violating an individual's constitutional right; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act.  Gleason v. East Norriton Township, 2012 WL 3024011 (E.D.Pa.) quoting Fernandors v. District of Columbia, 382 F.Supp.2d 63, 72 (D.D.C.2005).  Citing a purported absence of case law and model jury instructions, defendant police officers argue that the law of Third Circuit precludes finding bystander liability absent excessive force.  This position simply is untrue.

Federal Courts, including courts within the Third Circuit, have consistently and unequivocally viewed bystander liability as a viable claim where a plaintiff alleges false arrest and/or malicious prosecution, but does not allege excessive force.  See, Coleman v. City of Phladelphia, 2005 WL 2396754, at *7 (E.D. Pa. Sept. 28, 2005) (finding plaintiff's claim for section 1983 bystander liability emanated from his claim that defendants deprived him of his constitutional right to be free from unreasonable searches); Dempsey v. Bucknell Univ., 2012 WL 1569826, at *11 (M.D. Pa. May 3, 2012) ("Here, Plaintiffs allege that Defendant Lauver knew that arresting officers lacked probable cause to arrest and prosecute Plaintiff Reed, that he had the authority to stop the arrest and prosecution, and that he failed to do so . . . . Plaintiffs have alleged sufficient facts to withstand a motion to dismiss a supervisory liability or bystander liability claim against Defendant Lauver"); Smith v. Mensinger, 293 F.3d 641, 650-52 (3d Cir.2002) ("In order to establish a claim for bystander liability for the actions of a fellow officer, the plaintiff must establish that the officer "observe[ed] or had reason to know . . . *that a citizen was being unjustifiably arrested*") (internal citations omitted) (emphasis added).  Thus, defendants' representation that no Third Circuit case law addresses this issue clearly is incorrect.

Accordingly, as plaintiff's bystander liability claim is properly plead and properly stated, the motion to dismiss of defendant police officers Ricardo and Murawski should be denied.

C.   **The Moving Defendants' Motion Should Be Denied Because Qualified Immunity Does Not Apply Where Case Law Shows Plaintiff's Constitutional Rights Were Clearly Established**

Indeed, the fact that the law is clear means also that defendants' claim for qualified immunity must fail. Qualified immunity "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). Two interests are balanced by the rule: "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." Id.

A qualified immunity analysis requires consideration of two concepts. "First, a court must decide whether the facts that a plaintiff has alleged . . . make out a violation of a constitutional right." Pearson, 555 U.S. at 232. "Second, if the plaintiff has satisfied this first step, the court must decide whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." Id. The second prong is met when it would be "clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier v. Katz, 533 U.S. 194, 202 (2001). Although the inquiry is normally considered in that order, it need not be. Id. at 236. Thus, the critical issue is whether Mr. Goldwire sufficiently alleged a violation of a clearly established constitutional right.

As the Honorable Gerald A. McHugh, Jr. noted recently in Gaymon v. Borough of

Collingdale:

> Defendants bear the burden of establishing their entitlement to the affirmative defense of qualified immunity. See Halsey v. Pfeiffer, 750 F.3d 273, 288 (3d Cir. 2014). Thus, in light of defendants' arguments, to succeed under either theory, they must prove that the statutory or constitutional right in question was not clearly established at the time of the incident. For purposes of this inquiry, the "contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Schneyder v. Smith, 653 F.3d 313, 329 (3d Cir. 2011) (citing Anderson v. Creighton, 483 U.S. 635, 640 (1987)). In evaluating the state of the law in 2014, the "salient question" is whether the officers had "fair warning" that their conduct was unconstitutional. See Hope v. Pelzer, 536 U.S. 730, 741 (2002).

> To be established clearly, however, there is no need that "the very action in question [have] previously been held unlawful." Wilson v. Layne, 526 U.S. 603, 615 (1999). The unconstitutionality of outrageous conduct obviously will be unconstitutional, this being the reason, as Judge Posner has said, that **"[t]he easiest cases don't even arise."** K.H. v. Morgan, 914 F.2d 846, 851 (7th Cir. 1990). But even as to action less than an outrage, "officials can still be on notice that their conduct violates established law . . . in novel factual circumstances." Hope v. Pelzer, [536 U.S. at 741]. Safford Unified Sch. Dist. No. 1 v. Redding, 557 U.S. 364, 377–78 (2009) (emphasis added).

> When no case law addresses the specific facts at issue, "a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question."2 Hope, 536 U.S. at 741. See also Schneyder, 653 F.3d at 330 ("There has never been a section 1983 case accusing welfare officials of selling foster children into slavery; it does not follow that if such a case arose, the officials would be immune from damages liability because no previous case had found liability in those circumstances.") (internal citation omitted); Sterling v. Borough of Minersville, 232 F.3d 190, 198 (3d Cir. 2000)

> In other words, certain conduct will be so extreme that one would not expect a prior decision on the issue: In some cases this absence of precedent may even evince the impropriety of the practice." Alexander A. Reinert, "Does Qualified Immunity Matter?" 8 U. ST. THOMAS. L. J. 477, 484 (Spring 2011).

2015 WL 4389585, at *6-7 (E.D. Pa. July 17, 2015) (emphasis in original).

Here, defendants do not take issue with any of the facts alleged. Instead, only an absence of case law and model jury instructions are cited as the reasons that defendant police officers Ricardo and Murawski are entitled to qualified immunity. As previously explained, that contention simply is untrue; there is case law addressing this issue in the Third Circuit and the case law supports plaintiff's position. However, even if there were no case law referencing bystander liability in the context of false arrest, this is one of those "easiest" of cases described by Judge Posner and Judge McHugh. Any police officer should know that a duty to intervene exists when a fellow officer is falsely arresting, maliciously prosecuting, and falsely imprisoning a citizen in plain sight. The failure to act in such a case leaves the officer liable as a bystander.

Mr. Goldwire alleges that exact scenario. In his Complaint, it is alleged that despite knowing plaintiff was properly licensed to carry a firearm, defendant Landherr proceeded to detain and arrest Mr. Goldwire without any legal basis to do so. See Complaint at ¶ 23. That despite having an opportunity to intervene and prevent Mr. Goldwire's unlawful arrest and detainment, none of the other defendant police officers made any effort to prevent what they knew to be an illegal arrest. Id. at ¶ 24. At this stage in the litigation, the Court must accept the plaintiff's well-pleaded allegations as true and draw all reasonable inferences in his favor. The allegations contained in the Complaint establish that the defendant police officer knew Mr. Goldwire's rights were being violated (that he was being falsely arrested and imprisoned) and chose to turn a blind eye. Because any reasonable police officer would know that false arrest, false imprisonment, and malicious prosecution are constitutional violations, the duty to intervene on Mr. Goldwire's behalf was present and defendants' knowing failure to act precludes any defense of qualified immunity. Accordingly, the motion to dismiss of defendant police officers Ricardo and Murawski should be denied.

10

## V.     **CONCLUSION**

For all of the foregoing reasons, plaintiff Kelly Goldwire, respectfully requests that this Court enter an Order, in the form proposed, denying the motion to dismiss of defendant police officers Ricardo and Murawski.

Respectfully submitted,


_____/s BSC5184_____
Brian S. Chacker, Esquire
Gay Chacker & Mittin, P.C.
1731 Spring Garden Street
Philadelphia, PA  19130
Tel: (215) 567-7955
Fax: (215) 567-6809
bchacker@gaychackermittin.net

Date:  August 11, 2015                     *Attorney for Plaintiff*

11

## CERTIFICATE OF SERVICE

I, Brian S. Chacker, Esquire, hereby certify that a true and correct copy of the foregoing

Opposition to defendant City of Philadelphia's Motion to Dismiss was served this 11th day of

August, 2015, by the ECF electronic filing system, upon the following:

Michael R. Miller, Esquire
Assistant City Solicitor
City of Philadelphia Law Department
1514 Arch Street, 14th Floor
Philadelphia, PA 19102
Michael.r.miller@phila.gov

_____/s BSC5184_____
Brian S. Chacker, Esquire