IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KELLY GOLDWIRE | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| CITY OF PHILADELPHIA, | : | |
| TODD LANDHERR, | : | |
| ROSA RICARDO, | : | |
| DANIEL MURAWSKI, and | : | |
| JOHN DOE CITY OF PHILADELPHIA | : | |
| POLICE OFFICERS I-III | : | NO. 15-2856 |

MEMORANDUM

Dalzell, J.                                                                                                September 10, 2015

## I.      Introduction

We consider here two motions to dismiss filed by Rosa Ricardo, Daniel Murawski, and the City of Philadelphia. Plaintiff Kelly Goldwire brings this action pursuant to 42 U.S.C. § 1983. We have jurisdiction under 28 U.S.C. § 1331.

## II.     Standard of Review

As is by now well-rehearsed, a defendant moving to dismiss under Fed. R. Civ. P. 12(b)(6) bears the burden of proving that the plaintiff has failed to state a claim for relief. See Fed. R. Civ. P. 12(b)(6); see also, e.g., Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005). To survive a Rule 12(b)(6) motion, the complaint must contain sufficient factual matter, accepted as true, to state a facially plausible claim to relief. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

As the Supreme Court has stressed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action…do not suffice." Id. Courts "are not bound to accept as true a legal conclusion couched as a factual allegation." Twombly, 550 U.S. at 555.

In the wake of Twombly and Iqbal, our Court of Appeals laid out a two-part test to apply when considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6):

> First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'

Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009) (internal citations omitted). In deciding a motion to dismiss, we may consider "the allegations contained in the complaint, exhibits attached to the complaint and matters of public record," and any "undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." Pension Benefits Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).

We recite the facts as they appear in the complaint.

**III.    Factual Background**

Plaintiff Kelly Goldwire is a self-employed, certified Fugitive Recovery Agent. Compl. at ¶ 8. As such an Agent, Goldwire pursues individuals with open bench warrants and is licensed to carry a firearm. Id. at ¶¶ 8, 20.

On March 24, 2014, at around 1:30 a.m., Goldwire was driving near 11th and Cambria Streets in Philadelphia, Pennsylvania while investigating the whereabouts of a fugitive he was

pursuing. Id. at ¶ 9. Goldwire noticed that a police vehicle was following him and as Goldwire turned onto Germantown Avenue, the police vehicle engaged its emergency lights indicating that Goldwire should pull over. Id. at ¶ 10, 12. Goldwire complied. Id. at ¶ 13. Defendant Officer Todd Landherr was driving the police vehicle. Id. at ¶ 12. After Goldwire pulled over, defendant Officers Rosa Ricardo, Daniel Murawski, and John Does I-III arrived as backup for the stop. Id. at ¶ 14.

The officers, led by Officer Landherr, all approached Goldwire's vehicle. Id. at ¶ 16. Officer Landherr informed Goldwire that one of his taillights was out. Id. While requesting Goldwire's driver's license and insurance information, Officer Landherr "who knew Mr. Goldwire and knew his vehicle, asked whether Mr. Goldwire was armed and where his firearm was located." Id. at ¶ 17. Goldwire told Officer Landherr that his firearm was behind him on the floor of his vehicle. Id. at ¶ 18.

After Goldwire told Officer Landherr where his firearm was, Officer Landherr ordered him to get out of the car and immediately arrested him. Id. at ¶ 19. Goldwire reminded the police officers that he was licensed to carry a firearm and offered to produce all of the licensing paperwork in his wallet, including his Act 235 license. Id. at ¶¶ 20-21. None of the officers would look at or review his Act 235 license, and despite knowing that Goldwire was properly licensed to carry a firearm, the officers continued to detain and arrest him. Id. at ¶¶ 22-23. None of the officers made any effort to prevent his arrest. Id. at ¶ 24.

After detaining and arresting Goldwire, the officers "prepared and caused to be prepared police paperwork intentionally misrepresenting the events that led to" his arrest. Id. at ¶ 25. Goldwire was charged with carrying a firearm without a license and carrying a firearm in public. Id. at ¶ 27. Goldwire remained incarcerated for at least five days while gathering sufficient funds

to make bail. Id. at ¶¶ 28-29. When the officers arrested Goldwire, he advised them that he was receiving chemotherapy and could not afford to miss his next appointment, scheduled for later that morning. Id. at ¶ 30. Goldwire missed his appointment. Id. at ¶ 31. On December 30, 2014, Goldwire was found not guilty on all charges. Id. at ¶ 32. He was without his license to carry a firearm for approximately five months, his firearm has not been returned to him, and he has been unable to work as a Fugitive Recovery Agent. Id. at ¶¶ 33-36.

Goldwire asserts three claims under 42 U.S.C § 1983. In Count I, he alleges that Officer Landherr subjected him to false arrest, false imprisonment, and malicious prosecution. Id. at ¶¶ 39-44. In Count II, Goldwire alleges that Officers Ricardo, Murawski, and the three John Does are liable under a theory of bystander liability or failure to intervene regarding Officer Landherr's actions and conspired to conceal their unlawful conduct. Id. at ¶¶ 45-50. In Count III, Goldwire brings a Monell claim against the City of Philadelphia. Id. at ¶¶ 51-61.

Officers Ricardo and Murawski move to dismiss Count II of the complaint, arguing that they are entitled to qualified immunity. The City of Philadelphia moves to dismiss Count III of the complaint as factually insufficient. Goldwire opposes both motions.

**IV.   Discussion**

A cause of action under Section 1983 requires only two allegations: a person has deprived the plaintiff of a federal right, and that person acted under color of state or territorial law. Gomez v. Toledo, 446 U.S. 635, 640 (1980); see also Shuman ex rel. Shertzer v. Penn Manor Sch. Dist., 422 F.3d 141, 146 (3d Cir. 2005).

We consider the defendants' motions to dismiss.

4

A.      **Officers Ricardo And Murawski's Motion To Dismiss Count II**

Officers Ricardo and Murawksi argue that they are entitled to qualified immunity because "the Third Circuit Court of Appeals has never held that police officers have a duty to intervene" when they observe another officer making a false arrest. Officers' Mem. at 1.

An officer asserting an entitlement to qualified immunity must claim that his conduct did not violate a clearly established constitutional right of which a reasonable officer would have known. Behrens v. Pelletier, 516 U.S. 299, 305 (1996); Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Officers bear the burden of demonstrating their entitlement to that affirmative defense. Halsey v. Pfeiffer, 750 F.3d 273, 288 (3d Cir. 2014). When evaluating whether an officer is entitled to qualified immunity we must ask, in no particular order, (1) whether the facts, taken in the light most favorable to the party asserting injury, show that the officer's conduct violated a constitutional right, and (2) whether the right was clearly established. Saucier v. Katz, 533 U.S. 194, 201 (2001) (explaining the two steps in the context of a mandatory sequence); Pearson v. Callahan, 555 U.S. 223, 227, 236 (2009) (holding the sequence of the two steps to be optional). As Officers Ricardo and Murawski only make an argument as to the second prong, we will first consider whether the right was clearly established.

A right is clearly-established if its contours, in light of pre-existing law, are sufficiently clear that any reasonable officer would understand that his conduct violates that right. Anderson v. Creighton, 483 U.S. 635, 640 (1987); George v. Rehiel, 738 F.3d 562, 572 (3d Cir. 2013). Qualified immunity offers no protection to an officer when existing precedent places the statutory or constitutional question beyond debate. Ashcroft v. al-Kidd, -- U.S. --, 131 S. Ct. 2074, 2083 (2011). The ultimate question is whether an officer had fair warning that his conduct

deprived a plaintiff of a constitutional right. Schneyder v. Smith, 653 F.3d 313, 329 (3d Cir. 2011).

But the law may be clearly established, and an officer may be found to have had fair warning, even if no court has previously held the specific conduct in question to be unlawful. Safford Unified Sch. Dist. No. 1 v. Redding, 557 U.S. 364, 377 (2009); Wilson v. Layne, 526 U.S. 603, 615 (1999). Sometimes, the very action in question will not have been previously held unlawful because some outrageous conduct is so obviously unconstitutional that the "easiest cases don't even arise." Safford, 557 U.S. at 377 (quoting K.H. v. Morgan, 914 F.2d 846, 851 (7th Cir. 1990)). But even when an officer's conduct is "less than an outrage," he should still be on notice that his conduct could violate established law. Id. at 377-78 (citing Hope v. Pelzer, 536 U.S. 730, 741 (2002)). The fact that no court has yet had the opportunity to declare certain conduct obviously or outrageously unconstitutional does not make the conduct in question less obvious or outrageous.

The Fourth Amendment prohibits a police officer from arresting a citizen without probable cause. Orsatti v. New Jersey State Police, 71 F.3d 480, 482 (3d Cir. 1995) (citing Papachristou v. City of Jacksonville, 405 U.S. 156, 169 (1972)). If a police officer arrests a person without probable cause, then he may be liable in a civil rights suit for damages. Id. at 483.

If an officer fails or refuses to intervene when unconstitutional conduct takes place in his presence, that officer is directly liable under Section 1983. Smith v. Mensinger, 293 F.3d 641, 650 (3d Cir. 2002) (explaining this legal principle in the context of excessive force). Mensinger considered a prisoner's claims against correctional officers who either beat him or failed to intervene while observing their colleagues beat him. Id. But the principle in Mensinger that officers have a duty to intervene when they observe a constitutional violation committed in their

6

presence extends beyond the specific facts of that case and its excessive force context. See, e.g., Bistrian v. Levi, 696 F.3d 352, 371 (3d Cir. 2012) (extending the standard from Mensinger to include cases of inmate-on-inmate attacks); Baker v. Monroe Township, 50 F.3d 1186, 1193 (3d Cir. 1995) (explaining that a supervising officer's knowledge of, and acquiescence in, other officers' use of excessive force and other conduct violating the plaintiffs' Fourth Amendment rights rendered him liable for those violations); Kohn v. School Dist. of City of Harrisburg, 817 F. Supp. 2d 487, 508 (M.D. Pa. 2011) (applying the reasoning from Mensinger in a Due Process claim regarding termination from state employment). Contra Shrey v. Kontz, 981 F. Supp. 2d 333, 340 (M.D. Pa. 2013) (limiting Mensinger to Eighth Amendment claims and refusing to extend it to Fourth Amendment claims made post-trial). But see Herrera v. City of New Brunswick, 2008 WL 305275, *10 (D.N.J. Feb. 1, 2008) (Walls, J.) (explaining that to establish a claim for an officer's bystander liability for the actions of a fellow officer, a plaintiff must establish that the officer observed or had reason to know (1) excessive force was being used, (2) a citizen was being unjustifiably arrested, or (3) any constitutional violation was being committed by a law enforcement official) (citing Anderson v. Branen, 17 F.3d 552, 557 (2d Cir. 1994)).

    If an officer witnesses unconstitutional conduct, and fails to intervene, he is liable under Section 1983. That has been the law since well before this alleged incident. Any reasonable officer would have known in March of 2014 that he had violated a citizen's constitutional rights when he arrested that citizen without probable cause. Any reasonable officer would also have known that failing to intervene when another officer violated a citizen's constitutional rights -- right before him -- was unconstitutional.  And any reasonable officer would therefore have

known that failing to intervene when his fellow officer executed a false arrest was also unconstitutional.[1]

The officers make no argument as to whether the facts, taken in the light most favorable to Goldwire, demonstrate that Officer Landherr's conduct violated Goldwire's constitutional right to be free from unlawful arrest. Accepting the factual allegations in the complaint as true, Officer Landherr arrested Goldwire for carrying a firearm even though he knew that Goldwire was licensed to carry that firearm. Such allegations, taken as true, demonstrate that Officer Landherr arrested Goldwire without probable cause.

As Officers Ricardo and Murawski are not entitled to qualified immunity, we will deny their motion to dismiss Count II of the complaint.

### B.      The City of Philadelphia's Motion To Dismiss Count III

The City moves to dismiss Goldwire's Monell claim, arguing that the complaint makes no factual allegations regarding the City's policies or customs and that it fails to identify a municipal decisionmaker. City Mem. at 1.

The complaint asserts that the City of Philadelphia has a policy or custom "to cover-up and to avoid detection of acts of police abuse or improper use of authority by charging victims of police abuse with criminal offenses thereby attempting to prevent the victim's access to the

---

[1] While district courts have rejected some plaintiffs' Section 1983 claims for false arrest on the theory of bystander liability, those courts rejected those claims because there was no underlying false arrest -- not because the officers could not be held liable on a bystander liability or failure to intervene theory. See, e.g., Dempsey v. Bucknell University, -- F. Supp. 3d --, 2015 WL 58855, *9 (M.D. Pa. Jan. 5, 2015) (Brann, J.) (explaining that there could be no Section 1983 claim under a theory of supervisory or bystander liability for false arrest and malicious prosecution because there was no underlying constitutional violation); Bryant v. City of Philadelphia, 890 F. Supp. 2d 591, 601 (E.D. Pa. 2012) (wherein Judge Robreno explained that there could be no Section 1983 claim under a theory of bystander liability for unlawful seizure, false arrest, or excessive force because there was no underlying violation to ground bystander liability).

courts and to due process." Compl. at ¶ 53. The complaint elaborates that the City inadequately supervises and trains its officers, "thereby failing to adequately discourage further constitutional violations." Id. at ¶ 54. The complaint also claims that the City does "not require appropriate in-service training or re-training of officers who were known to have engaged in police misconduct." Id. Further, the complaint avers that the City fails to train its officers "against a code of silence or 'blue code' of officers refusing to intervene against or provide truthful information against constitutional violations and misconduct committed by their fellow officers." Id. at ¶ 55.

A municipality is not liable for its employees' constitutional torts under a theory of respondeat superior -- that is, a municipality cannot be held liable for its employees' torts solely by virtue of their employment relationship. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978). A municipality is liable for its employees' violations of Section 1983 only where the "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." Id. at 694.

A plaintiff can demonstrate the existence of a governmental policy by showing "that a 'decisionmaker possess[ing] final authority to establish municipal policy with respect to the action' issued an official statement of policy." Jiminez v. All American Rathskeller, Inc., 503 F.3d 247, 250 (3d Cir. 2007) (quoting Pembaur v. City of Cincinnati, 475 U.S. 469, 481 (1986)) (internal alterations omitted). To show a custom, a plaintiff must establish that state officials engaged in a course of conduct so permanent and well-settled that it operated as law. Id. (citing Monell, 436 U.S. at 690).

A plaintiff must show a governmental policymaker's responsibility for, or acquiescence in, the alleged tort. Id. (citing Andrews v. City of Phila., 895 F.2d 1496, 1480 (3d Cir. 1990)).

9

The plaintiff need not specifically identify the responsible decisionmaker, since practices that are considered custom or policy under Monell are ascribable to municipal decisionmakers. Bielevicz v. Dubinon, 915 F.2d 845, 850 (3d Cir. 1990). Thus, even if a custom or policy "has not been formally approved by an appropriate decisionmaker," it "may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law." Board of Cnty. Comm'rs v. Brown, 520 U.S. 397, 404 (1997).

To be liable under Section 1983, "the government must act with deliberate indifference to the purported constitutional deprivation." Jiminez, 503 F.3d at 250. As a result, a failure to train may constitute a policy or custom giving rise to Section 1983 liability for a municipality only if the failure demonstrates deliberate indifference to residents' constitutional rights. See City of Canton v. Harris, 489 U.S. 378, 389 (1989). A failure to train evinces deliberate indifference if

> in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need.

Id. at 390.

There must also be "a 'direct causal link between a municipal policy or custom and the alleged constitutional deprivation' to ground municipal liability." Jiminez, 503 F.3d at 249 (quoting City of Canton, 489 U.S. at 385). As our Court of Appeals has explained, causation is often a question for the jury:

> [T]o sustain a § 1983 action against the City, plaintiffs must simply establish a municipal custom coupled with causation – i.e., that policymakers were aware of similar unlawful conduct in the past, but failed to take precautions against future violations, and that this failure, at least in part, led to their injury. If the City is shown to have tolerated known misconduct by police officers, the issue whether the City's inaction contributed to the individual officers'

10

>decision to arrest the plaintiffs unlawfully in [a given] instance is a question of fact for the jury.

Bielevicz, 915 F.2d at 851.

Even taken in the light most favorable to Goldwire, the complaint's factual averments do not yet suffice to state a Monell claim. Goldwire merely proffers conclusory allegations that the City of Philadelphia inadequately trains or supervises its police officers, but the complaint provides no factual averments to support that contention. Nor does the complaint include facts regarding the City's alleged deliberate indifference, knowledge of prior constitutional violations, or tolerance of known misconduct by police officers. While factual allegations regarding a "code of silence" among police officers may support a Monell claim, here, the only factual allegation is that there is, and has been, a "code of silence" among police officers to conceal unconstitutional conduct, and that alone is not enough. See, e.g., Hellyer v. County of Bucks, 2014 WL 413874, *5 (E.D. Pa. Jan. 31, 2014) (Surrick, J.) (explaining that evidence pointing to a "code of silence" among officers and a municipality's "concomitant refusal to take disciplinary action" may suffice to establish a Monell claim) (citing Bailey v. County of York, 768 F.2d 503, 507 (3d Cir. 1985)); Jackson v. City of Pittsburgh, 688 F. Supp. 2d 379, 398 (W.D. Pa. 2010) (citing Bailey for its language regarding a "code of silence" to explain that an officer's inaction in the face of known misconduct may create an actionable violation of a plaintiff's constitutional rights under Section 1983).

As Goldwire's Monell claim fails to state a claim upon which relief can be granted, we will dismiss Count II of the complaint without prejudice.

## V. <u>Conclusion</u>

As Officers Ricardo and Murawski have failed to demonstrate their entitlement to qualified immunity, we will deny their motion to dismiss Count II of the complaint. We will, however, dismiss Count III of the complaint without prejudice, as Goldwire's factual allegations are insufficient at this juncture to demonstrate an entitlement to relief on his <u>Monell</u> claim. An appropriate Order follows.

BY THE COURT:

<u>/s/ Stewart Dalzell, J.</u>
Stewart Dalzell, J.